IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CEDRIC HAYNES                                                                       PLAINTIFF

AND

FEDERAL INSURANCE COMPANY                                      INTERVENING PLAINTIFF

V.                                                                        NO: 1:20CV155-GHD-DAS

METAL MASTERS, INC., LINCO, LLC,
TRACER ELECTRICAL CONTRACTORS,
INC., G2 RESOURCES, INC., PRICE
LOGPRO, LLC, BID AUTOMATION, LLC
FORMERLY KNOWN AS TRI-DELTA
SYSTEMS AUTOMATION, LLC, AND
JOHN DOES 1-9                                                                    DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment as to Defendant Linco, LLC ("Linco") [277] and Defendant Linco's Motion for Summary Judgment [284]. Both Plaintiff Haynes and Defendant Linco have submitted responses and replies to each of the competing motions, and upon due consideration, for the reasons set forth herein, the Court hereby denies Plaintiff's Motion for Partial Summary Judgment and grants Defendant Linco's Motion for Summary Judgment.

### Factual and Procedural Background

Plaintiff Haynes, at all times relevant to this action, was employed by Winston Plywood and Veneer ("Winston"). Winston owns and operates a plywood manufacturing facility in Louisville, Mississippi, and employed Plaintiff Haynes as a utility man. The area in question of the plywood manufacturing facility in this case is known as the East Residuals area, which includes the merchandiser, residual conveyors 1075, 1076, and 1077, and the bark hog. The merchandiser

1

has seven saws which cut the wood into equal lengths, and during this process residual waste is created, including lily pads which are essentially leftover pieces of the logs. Conveyor 1075 is located under the merchandiser and catches residual waste produced and transports it to conveyor 1076. Conveyor 1076 obtains the residual waste and moves it to conveyor 1077, which then leads to the bark hog for further processing.

The East Residuals area was designed by G2, including the subject conveyors. Defendant Metal Masters fabricated conveyor 1076 in South Carolina. Defendant Linco installed, at least to an extent, conveyor 1076, the bark hog, and other parts in the East Residuals area. Defendant Price LogPro manufactured the log processing equipment connected to the conveyors in question. Defendant Bid Automation/Tri-Delta Systems was the designer of the electrical system that operated the conveyor. Defendant Tracer Electrical installed the electrical wiring components in the East Residuals area.

On December 10, 2017, a large lily pad was formed by the merchandiser and was placed on conveyor 1075 and moved toward conveyor 1076. As the lily pad was moving towards conveyor 1076, Haynes was radioed and instructed to go to the conveyor and remove the lily pad to prevent the bark hog from becoming jammed. The lily pad reached conveyor 1076 and Haynes was there to attempt removal of the lily pad. The conveyor continued moving throughout Haynes' attempt to remove the lily pad, and during his attempt, Haynes' arm was pinned between the log and a beam on the conveyor, which then severed his arm.

Presently, Plaintiff Haynes has moved for partial summary judgment as to Defendant Linco [277] and Defendant Linco has filed a competing motion for summary judgment [284]. All claims against the other Defendants have been resolved prior to this opinion, thus leaving Linco, LLC, as the only remaining Defendant in this matter.

2

## Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.,*

*Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Discussion

Plaintiff Haynes' complaint alleges that Linco was negligent by failing to install conveyor 1076 under the supervision of a qualified engineer, by failing to install an E-Stop, and by failing to perform a risk assessment of its work. Further, the complaint alleges that Linco is liable for installing, assembling, and/or placing into the stream of commerce the conveyor in a defective and unreasonably dangerous condition; liable for failing to warn potential users of the inherently dangerous characteristics of the conveyor; and liable for installing, assembling, and/or placing in the stream of commerce a conveyor that had no warning labels warning signs or guarding.

The present motions filed by Plaintiff Haynes and Defendant Linco only discuss the negligence claims regarding the engineer supervision, the E-Stop, and the risk assessment, however, the Court will later address Plaintiff Haynes remaining claims as well.

### I. Failure to install conveyor 1076 under the supervision of a qualified engineer

Plaintiff Haynes argues that Defendant Linco was under a duty to have a qualified engineer supervise the installation of conveyor 1076 as required by the American Society of Mechanical Engineers ("ASME") and that Linco was negligent for failing to do so. Specifically, Plaintiff notes that ASME B20.1 states that "the design and installation of conveyors and conveyor systems should be supervised by qualified engineers." ASME B20.1, p.1.

In order to establish his negligence claims against Linco, he must establish four elements of proof – duty, breach, causation, and damages. See *Hardin v. Town of Leaksville*, 345 So. 3d

557, 565 (Miss. 2022); *Strickland on Behalf of Strickland v. Rankin Co. Sch. Dist.*, 341 So. 3d 941, 945 (Miss. 2022).

Defendant Linco argues that this language merely suggests that a qualified engineer supervise but does not require it. Also, Linco argues that there is no evidence that this section of the ASME establishes a duty. However, courts have previously allowed similar collections of suggested industry standards provide evidence to show the reasonableness of a defendant's actions. *Bloome v. Joshua's Haven, Inc.*, 2019 WL 6528602, *3 (S.D. Miss. 2019) (quoting *Walker v. George Koch Sons, Inc.*, 2009 WL 837729, *9 (S.D. Miss. 2009)), see also *Taylor v. United Tech. Corp.*, 117 F. App'x 961, 963 (5th Cir. 2004). While industry standards such as the ASME are not dispositive as evidence of negligence, the language in question creates a fact question as to whether Linco owed a duty to have a qualified engineer supervise the installation of the conveyor.

Plaintiff next argues that there was no qualified engineer who supervised the installation of the conveyor, thus breaching they duty to have one present. Specifically, Haynes notes that Bill Carter of G2 does not have an engineering degree and is not a professional engineer and that the engineering firm Atwell and Gent and also the firm of Pryor and Morrow did not participate with installation of the subject conveyor in the East Residuals area. Bryan Lindsey is a professional engineer, but he testified that he did no engineering work for Winston on the East Residuals project.

Defendant Linco argues in return that the ASME does not define "qualified engineer" but does define "qualified person." Under the "qualified person" definition, Linco claims that multiple people involved in the installation of the conveyor would qualify as someone who could supervise the installation. Linco further argues that there were other engineers involved in the project that supervised the installation. Plaintiff Haynes has presented summary judgment evidence that shows

that those mentioned by Linco were either possibly not engineers or not involved in the specific area in question. Also, Linco has not provided evidence that the "qualified person" definition should apply when the ASME specifically calls for a qualified engineer, not just a qualified person.

Linco next takes issue with the element of causation, arguing that the alleged failure to install the conveyor under the supervision of a qualified engineer did not cause Plaintiff's injury. Linco states that Haynes has not claimed that the installation was done in a manner that did not follow the design. Also, Linco argues that there is no evidence that the installation of the conveyor caused the Plaintiff's injury or that there was a defect in the installation. Plaintiff responds and argues that a qualified engineer would have noted all the ways in which the conveyor deviated from industry standards, such as no E-Stop, inadequate guarding, no means for the removal of long lily pads, and so on.

Plaintiff Haynes' response is speculative as to what an engineer would have supposedly been able to find and correct if they were present for the installation. "In any tort case, identifying and proving the source of the harm that proximately caused a plaintiff's injuries is essential[,]" and Haynes has not done so. *Johnson & Johnson Inc. v. Fortenberry*, 234 So.3d 381, 403 (¶ 78) (Miss. 2017). The Court reiterates that Linco's responsibility in this case was to install the prefabricated conveyor. Plaintiff's briefing takes issue with the design of the conveyor, which the parties agree was not a responsibility of Linco. Haynes has failed to establish proximate causation in this claim, both cause in fact and legal causation. *Glover ex rel. Glover v. Jackson State Univ.*, 968 So.2d 1267, 1277 (Miss.2007). Concerning the cause in fact, or the "but-for" cause, Haynes has not shown that "but-for" the failure to have a qualified engineer supervise the installation, the injury would not have occurred, and Haynes has not shown that Linco should have reasonably expected the damages that occurred from failing to have a qualified engineer supervise the installation.

6

Plaintiff points to no evidence that the installation was done improperly or not according to the design, which is what Haynes appears to truly take issue with. Further, Plaintiff points to no evidence that Linco could expect the damages that resulted when there has been no issue alleged concerning the installation; instead, there is only speculation that an engineer would have found design defects with the conveyor, which as established was a duty belonging to someone other than Linco. Linco would not have anticipated that having an engineer supervise the installation would have had this result when Linco's sole duty was to install the prefabricated conveyor parts, of which the design had been already approved by Winston. Haynes fails to demonstrate how Linco's alleged breach of this duty directly led to Haynes' injury, reiterating that the Plaintiff has not alleged any fault of the actual installation. Further, the Court cannot ignore the extensive modifications that were made after Linco completed the installation. One of the modifications, a large beam across the conveyor, was added and later partially removed which left a portion of the beam on the edge of the conveyor. Plaintiff has testified that he would still have an arm if not for this piece of leftover metal, which Ken Carter, Winston's Vice President of Manufacturing, described as poor workmanship. Therefore, Haynes has failed to establish a material question of fact on the causation element, thus warranting summary judgment being granted in favor of Linco.

## II. Failure to equip the conveyor with an E-Stop

Plaintiff Haynes next argues that Linco breached its duty to ensure that the subject conveyor was equipped with an E-Stop in violation of industry standards, specifically ASME B20.1 and NFPA 79 ("Electrical Standards for Industrial Machinery"). While these industry standards do require E-Stops in certain locations depending on a variety of factors, Linco argues that it could not have a duty to install E-Stops when that was never something Winston hired, requested, or expected Linco to do.

7

As the Court previously discussed, it is undisputed that Linco was only responsible for installing the prefabricated conveyor parts. An E-Stop, as undisputed between the parties, is an electrical component, and it is further undisputed that Linco was not responsible for either the electrical design or installation. Linco did not supply, install, or design any electrical or electronic equipment for the conveyor, and according to the summary judgment evidence Linco was not expected or responsible to do so. The Court finds it clear that while these standards might present evidence of a duty for someone, Linco was under no responsibility, requirement, or expectation to provide or install any electronic components, including E-Stops, and thus could not have had a duty to do so. Haynes has therefore failed to establish the element of a duty belonging to Linco regarding placing E-Stops on the conveyor, thus warranting summary judgment on this claim in favor of Linco.

### III. Failure to perform a risk assessment of the conveyor

Haynes first argues that Linco breached its duty to perform a risk assessment of the conveyor in violation of ANSI ("American National Standards Institute") B11.0. ANSI B11.0 states that "[t]he supplier and the user either separately or jointly shall identify hazards, assess risks and reduce risks to an acceptable level...." ANSI B11.0. As the Court has discussed previously, the ANSI can be used to establish the existence of a duty. *Bloome v. Joshua's Haven, Inc.*, 2019 WL 6528602, *3 (S.D. Miss. 2019). Plaintiff Haynes argues that this industry standard applies to "machinery," and Linco claims that what it installed was not "machinery," and therefore the standard should not apply. Summary judgment evidence shows that Linco agreed to install a conveyor, not merely just a pan as it claims, and a conveyor could potentially qualify as a machine under the ANSI definition. Haynes has established there to be a material fact issue as to whether

8

Linco maintained a duty to perform a risk assessment, and further, Linco does not dispute that a risk assessment was not completed.

This leads the Court to the causation element of this claim. ANSI B11.0 provides further guidance on the extent to which its standards should apply, and specifically, ANSI B11.0 states that the above standard should apply "[w]ithin the scope of their respective work activities." ANSI B11.0. As the Court has noted numerous times, Linco was only responsible for the installation of the conveyor. Haynes argues that a risk assessment of only the conveyor's installation would have led to the discovery of a lack of E-Stops and other design issues. It is worth nothing that there had not been any electrical work done on the conveyor in question when Linco completed installation, and again, Haynes has not alleged the installation was done improperly or done not according to the design.

ANSI B11.TR3 basically reiterates ANSI B11.0 verbatim, and therefore the Court feels no need to repeat its duty and breach analysis for this claim. Lastly, the Court discusses Haynes' claim that a risk assessment was required under NFPA 79. NFPA 79 is the electrical standard for industrial machinery, which does not pertain to Linco. NFPA 79's scope is limited to "the electrical/electronic equipment, apparatus, or systems of industrious machines operating from a nominal voltage of 600 volts or less ...." NFPA 79. It is undisputed that the conveyor installed by Linco was not electric, did not have a power supply, and was not considered electronic equipment. Given that Linco's duties or work did not include any electronic work with the conveyor, there was therefore no duty to perform a risk assessment under a standard for electronic machinery.

The Court now will discuss causation as it pertains to the alleged breach of failing to perform a risk assessment in violation of ANSI B11.TR3 and ANSI B11.0. Defendant Linco's

9

responsibility in the East Residuals area was to install the conveyor which it did not manufacture nor design. Haynes alleges that a risk assessment would have uncovered issues such as a lack of E-Stops or that the bark hog would jam. The evidence shows that a risk assessment of the conveyor's installation would not have been able to show these things, as E-Stops were the responsibility of another party doing the electrical work, which was done at a later date. Plaintiff's issues that allegedly would have been discovered during a risk assessment are directed more towards the design of the equipment or electronics, which was not within the duties of Linco.

Further, Haynes points to no specific record evidence showing how Linco's installation of the conveyor was the proximate cause of his injuries. Instead, Linco points to the numerous modifications that were made to the conveyor, which the Plaintiff admits were the cause of his arm being severed. Plaintiff's testimony demonstrates that after each modification to the conveyor a new risk assessment would have been needed, which further removes Linco from liability under these claims. Linco has submitted evidence and testimony that it could not have foreseen that the modifications such as the I-beam and its removal would have been made and could not have foreseen that the Plaintiff's employer would suggest or instruct that lily-pads be removed from the conveyor while it moves. In short, there is no evidence that the desired risk assessment of the conveyor's installation by Linco would have had any causative impact on the injury that took place. The evidence submitted shows that Haynes truly takes issue with the design of the conveyor which was not Linco's responsibility on the site when the conveyor was being installed. Haynes has failed to create a genuine issue of fact on causation as to the alleged negligence of failing to conduct a risk assessment under the multiple avenues discussed, and thus summary judgment is warranted in Linco's favor on these claims.

10

## IV.  Plaintiff's remaining claims

In response to Linco's motion for summary judgment, Haynes asserts that Linco's motion is actually a motion for partial summary judgment since not all claims are discussed by Linco. Plaintiff states that Linco is also liable for installing, assembling, and/or placing into the stream of commerce the conveyor in a defective and unreasonably dangerous condition; liable for failing to warn potential users of the inherently dangerous characteristics of the conveyor; and liable for installing, assembling, and/or placing in the stream of commerce a conveyor that had no warning labels warning signs or guarding.

Plaintiff's remaining claims appear to plainly be claims governed by the MPLA ("Mississippi Products Liability Act"). The MPLA governs "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence[,] or breach of implied warranty, except for commercial damage to the product itself[.]" See Miss.Code Ann. § 11–1–63. By its clear language, the current MPLA subsumes actions for damages caused by a product based on negligence; this would include negligence claims premised on design defect, manufacturing defect, and failure to warn. See, e.g., *Scirocco v. Ford Motor Co.*, No. 5:13–CV–128–KS–MTP, 2015 WL 2451225, at *1 (S.D.Miss. May 21, 2015). It is clear that Plaintiff's remaining claims are premised on design defect and failure to warn which are subsumed by the MPLA and cannot exist as standalone claims.

"[T]he MPLA supplies the exclusive remedy for products liability claims against manufacturers, designers, and sellers of a product[.]" *Funches v. Progressive Tractor & Implement Co., LLC*, 905 F.3d 846, 850 (5th Cir. 2018). Linco is not the manufacturer of the conveyor or any part of the conveyor that the Plaintiff takes issue with; Linco is not the designer of the conveyor or any of its parts; and Linco is not the seller of the conveyor or its parts. Since the MLPA

"provides the exclusive remedy for products-liability claims[,]" and the MLPA "abrogate[s] all products-liability claims based on strict-liability or negligence theories[,]" it is clear that these claims cannot proceed against Defendant Linco. *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015)

## Conclusion

For the reasons stated above, the Court finds that Plaintiff Haynes' Motion for Summary Judgment [277] is DENIED and that Defendant Linco's Motion for Summary Judgment [284] is GRANTED. All claims against Defendant Linco are DISMISSED.

An order in accordance with this opinion shall issue this day.

This, the 8th day of September, 2023.

_____
SENIOR U.S. DISTRICT JUDGE

12